## TABLE OF CONTENTS

I.      STATEMENT OF THE CASE.........................................................................1

II.     STATEMENT OF THE FACTS .....................................................................2

III.    LAW AND ARGUMENT ...............................................................................6

        A.      Standard of Review..............................................................................6

        B.      Officer Smith was Not Acting Under Color of State Law and, Therefore,
                Plaintiff's Claims for Violation of Her Rights Under the Fourth and
                Fourteenth Amendments Fail.................................................................7

        C.      Plaintiff's Fourth Amendment Claim Fails as a Matter of Law ...........12

        D.      Plaintiff's Allegations Fails to Set Forth Any Evidence of a Procedural Due
                Process Claim so that Such a Claim Fails..............................................13

        E.      Even if Officer Smith was Acting Under the Color of State Law, Plaintiff's
                Substantive Due Process Claim Under the Fourteenth Amendment Fails. ..........13

        F.      Assuming Arguendo that Officer Smith was Acting Under the Color of
                State Law, He is Entitled to Qualified Immunity. .................................17

IV.     CONCLUSION..............................................................................................19

i

## TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................ 14

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) .......................... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................................................................................................... 6

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011) ........................................ 17, 18

*Bowers v. City of Flint*, 325 F.3d 758 (6th Cir.2003) .................................................. 13

*Burris v. Thorpe*, 166 F.App'x 799 (6th Cir.2006) ...................................................... 8

*Callahan v. Pearson,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ........................... 18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ...................... 6

*Cnty of Sacramento v. Lewis*, 523 U.S. 833 (1998) ..................................................... 14

*Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491 (6th Cir.2012) ................................. 17

*Doe v. Round Valley Unified School District*, 873 F.Supp.2d 1124 (D. Ariz.2012) ............. 14, 18

*Doe v. Waraksa*, D.Conn. No. 3:06CV1262, 2013 WL 597800 (Feb. 13, 2013) ........................... 7

*Drury v. Volusia County*, M.D.Florida Case No. 6:10-CV-1176-Orl-28DAB, 2012 WL 162362 ................................................................................................................................ 8

*Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56, L.Ed.2d 185 (1978) ............... 7

*Flottman v. Hickman County*, M.D. Tennessee Case No. 3-09-0770, 2010 WL 4054150 (M.D. Tenn.2010) ................................................................................................................. 13

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir.2012) ............................... 13

*Harmon v. Grizzel*, S.D. Ohio Case No. 1:03CV169, 2005 WL 1106975 (S.D.Ohio 2005) ......................................................................................................................... 8, 9, 10

*Lillard v. Shelby Cnty. Bd. Of Educ.*, 76 F.3d 716 (6th Cir.1996) ................................. 12

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ............................................................................................................................... 7

*Monsky v. Moraghan*, 127 F.3d 243 (2nd Cir.1997) .................................................... 7, 8

*Nishiyama v. Dickson Cnty.*, Tennessee, 814 F.2d 277 (6th Cir.1987) ............................... 7

*Pitchell v. Callan*, 13 F.3d 545 (2nd Cir.1994) .......................................................... 8

*Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) ...................... 17

*Simescu v. Emmet Cnty. Dept. of Social Servs.*, 942, F.2d 372 (6th Cir.1991) ..................... 7

*Stengel v. Belcher*, 522 F.2d 438 (6th Cir.1975) ........................................................ 8

*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3rd Cir.1989) ............................... 14

*U.S. v. Giordano*, 442 F.3d 30 (2nd Cir.2006) .......................................................... 8

*U.S. v. Walsh*, 194 F.3d 37 (2nd Cir.1999) ............................................................... 8

*Villanueva v. City of Scottsbluff*, D. Neb. Case No. 4:11CV3185, 2014 WL 840634 (D. Neb.2014) .................................................................................................................. 14, 15

*Waters v. City of Morristown, Tenn.*, 242 F.3d 353 (6th Cir. 2001) ................................. 8

*West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, L.Ed.2d 40 (1988) .................................... 7

*White v. Pauly*, -- U.S. --, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) ................................ 18

*Wilson v. Luttrell*, 230 F.3d 1361 (6th Cir.2000) ..................................................... 12

**BRIEF IN SUPPORT**

**I.    STATEMENT OF THE CASE**

This lawsuit arises from a traffic stop on September 21, 2018, in Shaker Heights, Ohio and the subsequent interactions between Plaintiff and Defendant Tyler Smith ("Smith").   Plaintiff alleges the following:

1) As a police officer for Defendant City of Shaker Heights (the "City"), Smith was acting under the authority of his governmental position with the City and under the color of state law with respect to the sexual encounter between them;

2) Smith, while acting under the authority of the City and under the color of state law, knowingly used information (her phone number) he obtained while acting in his capacity as a police officer for personal use in violation of the Fourth Amendment to the United States Constitution;

3) Smith used his authority under color of law to pressure Plaintiff into having sex with him in violation of the Fourth Amendment to the United States Constitution;

4) Under color of state law, Defendants freely and openly violated the privacy rights of Plaintiff when Smith unlawfully used the information written on Plaintiff's ticket to contact her and use his governmental authority to have a sexual relationship with her in violation of both the Procedural and Substantive Due Process Clauses of the Fourteenth Amendment to the United States Constitution; and

5) The acts and conduct of Defendants have been in wanton and reckless disregard of Plaintiff's rights and feelings associated with Smith's pressuring Plaintiff to have sexual relations with him in violation of both the Procedural and Substantive Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

These claims fail as a matter of law.

## II.    STATEMENT OF THE FACTS[1]

On September 21, 2018, Officer Tyler Smith observed a Jeep Compass with the vanity license plate "WOOSPA" with darkly tinted windows. (Ex. A, Deposition of Tyler Smith, hereinafter "Ex. A, Smith Depo." at p. 85.[2])  Officer Smith activated his lights and siren and stopped the vehicle for a window tint violation. (Ex. A, Smith Depo. at p. 85.)  The vehicle pulled off on Shelburne Road in Shaker Heights, Ohio. (Ex. A, Smith Depo. at p. 85.)  The owner of the vehicle (Plaintiff) was not driving. (Ex. A, Smith Depo. at p. 85.)  Plaintiff was not driving because she had not paid for car insurance and did not want to drive without insurance. (Ex. B, Deposition of Queen Tiera Miller, hereinafter "Ex. B, Miller Depo." at p. 21.[3])  Officer Smith ran the plate, and Plaintiff had an outstanding warrant. (Ex. A, Smith Depo. at pp. 85-86.)  The driver also had an outstanding warrant. (Ex. A, Smith Depo. at p. 86.)  Another officer, Officer B. Meredith, Badge No. 59, also arrived on scene. (Ex. A, Smith Depo. at p. 85.)

At approximately 1:00 a.m. on the morning in question, Plaintiff and the driver went to Thistledown Racino. (Ex. B, Miller Depo. at p. 24.)  Plaintiff and the driver went to the bar at the Racino. (Ex. B, Miller Depo. at p. 24.)  Plaintiff did not drink any alcohol at the bar, but believes that the driver did drink alcohol at the bar. (Ex. B, Miller Depo. at pp. 24-25.)  Plaintiff does not recall if she ate, but she did not gamble. (Ex. B, Miller Depo. at p. 276.)  They were on their way back to a friend's house when they were stopped by Officer Smith. (Ex. B, Miller Depo. at p. 22.)

At the stop, Officer Smith was addressing the driver. (Ex. A, Smith Depo. at pp. 85-88.)  Plaintiff was in the passenger seat, and Officer Smith could not see her at that time. (Ex. A, Smith Depo. at p. 87.)  Officer Smith detained the driver, trying to confirm the warrant. (Ex. A, Smith

---

[1] Officer Smith states that Plaintiff's and his version of events involved in this matter differ greatly, but for purposes of this motion, Defendant accepts Plaintiff's testimony.
[2] The deposition of Tyler Smith, taken November 1, 2019, was filed December 16, 2019.
[3] The deposition of Queen Tiera Miller, taken November 4, 2019, was filed December 16, 2019.

Depo. at pp. 86, 88.)  The driver had a suspended driver's license.  (Ex. A, Smith Depo. at p. 86.)  She was crying and stated that she did not want to go to jail.  (Ex. A, Smith Depo. at pp. 88-89.)  Officer Smith tried to reassure her that she was not going to jail.  (Ex. A, Smith Depo. at p. 89.)  Because the driver had a suspended license, Plaintiff was cited for wrongful entrustment.  (Ex. A, Smith Depo. at pp. 86, 89, 93, Ex. 6.)  The ticket was executed by Officer Meredith.  (Ex. A, Smith Depo. at pp. 86, 89, 93m Ex. 6.)

The traffic stop cleared at approximately 4:00 a.m.  (Ex. A, Smith Depo. at pp. 95-96.)  Officer Smith's shift ended at 5:00 a.m. that day.  (Ex. A, Smith Depo. at p. 95.)  At the end of his shift, he turned in his tickets and in his paperwork, cleaned the cruiser of his gear for the next shift, and changed out of his uniform into black sweat pants and a jacket.  (Ex. A, Smith Depo. at pp. 96-97).

For summary judgment purposes, Defendants accept as true Plaintiff's version of the facts.  According to Plaintiff, at approximately 5:00 a.m. that morning, Plaintiff received a few calls from an unknown number.  (Ex. B, Miller Depo. at pp. 51-54.)  She did not answer the first few times, but did answer on the third or fourth call.  (Ex. B, Miller Depo. at pp. 53-54.)  When she answered, the caller identified himself as Officer Smith and asked if she was home.  (Ex. B, Miller Depo. at pp. 54-55.)  Officer Smith stated that he was near Plaintiff's house and asked if he could come over.  (Ex. B, Miller Depo. at pp. 54-55.)  Plaintiff said no and asked why Officer Smith was calling her.  (Ex. B, Miller Depo. at p. 55.)  Officer Smith stated that he was on St. Clair Avenue and again asked if she was at home.  (Ex. B, Miller Depo. at pp. 55-57.)  Plaintiff asked Officer Smith how he got her number, and he stated that he got it off the ticket.  (Ex. B, Miller Depo. at p. 57.)

Officer Smith asked if they could meet and talk.  (Ex. B, Miller Depo. at p. 57.)  Plaintiff asked why Officer Smith wanted to meet, and he told her that he wanted to fix the ticket, make it go away, or change the ticket.  (Ex. B, Miller Depo. at pp. 57-60.)  Plaintiff asked Officer Smith why he had given her a ticket, and he apologized.  (Ex. B, Miller Depo. at p. 60.)  Officer Smith asked if they could just meet for breakfast, but Plaintiff was hesitant to meet with him.  (Ex. B, Miller Depo. at p. 60.)  Officer Smith again asked if they could meet for breakfast and Plaintiff agreed.  (Ex. B, Miller Depo. at pp. 60-61.)

Officer Smith and Plaintiff met at Landmark Restaurant.  (Ex. B, Miller Depo. at pp. 62-64.)  Officer Smith again expressed his apologies about writing the ticket.  (Ex. B, Miller Depo. at pp. 63, 65.)  He asked her whether she would sleep with him if he could change the ticket.  (Ex. B, Miller Depo. at pp. 63, 65.)  Plaintiff said no and that Officer Smith should never have given her the ticket.  (Ex. B, Miller Depo. at p. 65.)  Officer Smith stated that he would pay for or fix the ticket and again asked if he fixed the ticket, would Plaintiff sleep with him.  (Ex. B, Miller Depo. at pp. 65-66.)  Plaintiff again said no and that she should never have gotten the ticket.  (Ex. B, Miller Depo. at p. 67.)  Plaintiff testified that Officer Smith said "I want to change it, but will you sleep with me, like are you going to sleep with me?"  (Ex. B, Miller Depo. at pp. 66-67.)

Officer Smith then offered that Plaintiff could follow him from the restaurant to get money for the ticket.  (Ex. B, Miller Depo. at pp. 67-68.)  At first, she responded that she was not going to do that.  (Ex. B, Miller Depo. at pp. 68-69.)  However, Plaintiff did follow him from the restaurant in her own car to Officer Smith's bank where he withdrew money.  (Ex. B, Miller Depo. at pp. 70-71.)  Officer Smith gave her $100.00 and told her that was all he could get at that time. (Ex. B, Miller Depo. at p. 71.)  He stated that he was giving her the $100.00 in case he could not fix the ticket and would give her the rest later when he got paid.  (Ex. B, Miller Depo. at pp. 71-

72, 74.)  Officer Smith then asked Plaintiff if she was "going to play him."  (Ex. B, Miller Depo. at p. 72.)  Plaintiff testified to "play him" meant to call the police or scream out for help.  (Ex. B, Miller Depo. at pp. 74-76.)  Plaintiff admitted she could have driven to the police station or somewhere else, called the police on her cell phone, but decided to follow Officer Smith to see if maybe he would give her some money.  (Ex. B, Miller Depo. at pp. 73, 75.)  Again, Plaintiff acknowledged she could have called the police, but chose to follow Officer Smith to the gas station in her own car.  (Ex. B, Miller Depo. at p. 86.)

Officer Smith then asked Plaintiff to follow him somewhere where they could have sex. (Ex. B, Miller Depo. at pp. 79-80.)  Plaintiff said no, but asked if he had a condom.  (Ex. B, Miller Depo. at pp. 80-81.)  Officer Smith said he did not have a condom, but could get one.  (Ex. B, Miller Depo. at p. 81.)  Officer Smith drove to the gas station to get one.  (Ex. B, Miller Depo. at pp. 81-82.)  Plaintiff followed him to the gas station in her vehicle where he went in and bought the condom.  (Ex. B, Miller Depo. at p. 83.)  Plaintiff allegedly stayed in her car while Officer Smith was in the gas station.  (Ex. B, Miller Depo. at p. 83.)

After exiting the gas station and buying a condom, Officer Smith told Plaintiff that she could follow him.  (Ex. B, Miller Depo. at p. 84.)  Plaintiff did not say no and decided to follow him to go have sex.  (Ex. B, Miller Depo. at pp. 84-85.)  She followed him to a side street, and Officer Smith got out of his car and asked Plaintiff to get in his car.  (Ex. B, Miller Depo. at p. 85.) Plaintiff said no and Officer Smith got in her car.  (Ex. B, Miller Depo. at p. 85.)  She unlocked the door for Officer Smith and he got into the passenger seat.  (Ex. B, Miller Depo. at p. 86.) Thereafter, Officer Smith performed oral sex on Plaintiff with her sitting in the passenger seat and Officer Smith kneeling on the floorboard of her Jeep Compass facing her.  (Ex. B, Miller Depo. at pp. 86-94.)  Plaintiff alleges that Officer Smith then put on a condom, and they had sex for a few

5

minutes.  (Ex. B, Miller Depo. at pp. 95-96.)  Officer Smith then left in his own car.  (Ex. B, Miller Depo. at p. 97.)  During the events of September 21, 2018, Plaintiff had her cell phone, but at no time did she call 9-1-1 for assistance.  (Ex. B, Miller Depo. at p. 86.)

Plaintiff does not testify to any threat of violence, threat of use of police power or ay coercion, beyond the promise to help her with the ticket.  The only alleged "coercion" is her own unsupported "fear" of some unknown event or retaliation due to his mere status as a police officer.

On May 14, 2019, Plaintiff filed her Complaint alleging claims for violation of the Fourth and Fourteenth Amendment against Officer Smith and Defendant City of Shaker Heights.  As fully set forth below, Plaintiff cannot maintain any of these claims and Officer Smith is entitled to judgment as a matter of law.

## III.    LAW AND ARGUMENT

### A.    Standard of Review.

"The plain language of [Federal] Rule [of Civil Procedure] 56c mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case and on which that party will bear the burden at trial.  In such situation, there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is only material if its resolution will affect the outcome of the lawsuit.  *See Anderson*, *supra*.

In this case, there is no dispute as to any material facts, and Defendant is entitled to judgment as a matter of law.  Therefore, for the reasons stated below, Defendant respectfully requests that this Court grant his Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

**B.    Officer Smith was Not Acting Under Color of State Law and, Therefore, Plaintiff's Claims for Violation of Her Rights Under the Fourth and Fourteenth Amendments Fail.**

"A § 1983 claim must embody . . . two elements:  1) the deprivation of a right secured by the Constitution of laws of the United States and 2) the deprivation was caused by a person acting under color of state law [i.e., the person must be a state actor]."  *Simescu v. Emmet Cnty. Dept. of Social Servs.*, 942, F.2d 372, 374 (6th Cir.1991), *citing Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732-33, 56, L.Ed.2d 185 (1978); *Nishiyama v. Dickson Cnty.*, Tennessee, 814 F.2d 277, 279 (6th Cir.1987) (overruled on other grounds).  To be considered a "state actor" under § 1983, one's conduct must be "fairly attributable to the State."  *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).  Thus, to even reach the questions of whether Officer Smith violated Plaintiff's Fourth and Fourteenth Amendment rights, Plaintiff must first establish that he was acting under color of state law, which she is unable to do.

"To act under color of state law or authority for purposes of section 1983, the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Doe v. Waraksa*, D.Conn. No. 3:06CV1262, 2013 WL 597800, *6 (Feb. 13, 2013), *citing Monsky v. Moraghan*, 127 F.3d 243, 245 (2nd Cir.1997).  "Moreover, '[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he *abuses* the position given to him by the State.'"  *Monsky*, 127 F.3d at 245, *quoting West v. Atkins*, 487 U.S. 42, 48-50, 108 S.Ct. 2250, L.Ed.2d 40 (1988) (emphasis in original).  "It is 'axiomatic that under 'color' of law means 'pretense' of law and that acts of

officers in the ambit of their personal pretenses are plainly excluded.'" *Monsky*, 127 F.3d at 245, *quoting Pitchell v. Callan*, 13 F.3d 545, 547-48 (2nd Cir.1994).

"[I]t is well established that an official may act under color of law even when he or she encounters the victim outside the conduct of official business and acts for reasons unconnected to his or her office, **so long as he or she employs the authority of the state in the commission of the crime**." *U.S. v. Giordano*, 442 F.3d 30, 43 (2nd Cir.2006) (emphasis added).  "[A] state actor [acts] under color of state law even when acting outside the ambit of official duty **because the official used his or her power to make the crime possible by causing the victim to submit**." *Giordano*, 442 F.3d at 43, *citing U.S. v. Walsh*, 194 F.3d 37, 41-43 (2nd Cir.1999) (emphasis added).  "[A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of ostensible state authority, is not conduct occurring under color of state law." *Burris v. Thorpe*, 166 F.App'x 799, 802 (6th Cir.2006).

> With regards to a police officer acting under color of state law, the Sixth Circuit explains:
>
> The fact that a police officer is on or off duty, or in or out of uniform is not controlling.  "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer acted under color of law."

*Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975).  Acts of police officers in ambit of their personal, private pursuits fall outside of civil rights statute.  *Stengel*, 522 F.2d at 441.  Instead, the conduct allegedly causing the deprivation of a constitutional law must be "fairly attributable" to the state.  *Harmon v. Grizzel*, S.D. Ohio Case No. 1:03CV169, 2005 WL 1106975 (S.D.Ohio 2005) (unreported and attached); citing *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 359 (6th Cir. 2001).  A plaintiff's **subjective fear of retribution alone is insufficient to establish that a police officer was acting under color of law**.  *Drury v. Volusia County*, M.D.Florida Case No. 6:10-CV-1176-Orl-28DAB, 2012 WL 162362 (unreported and attached) (emphasis added).

Officer Smith was not acting under color of state law.  When he meet with Plaintiff at the Landmark Restaurant or when he had sex with her, he was not on shift and was not acting within any authority as a police officer.  Here, the nature of the act – consensual sexual intercourse – was purely personal and private.  It was not part of Officer Smith's official responsibilities, and there is no evidence that Officer Smith intended to act in an official capacity.  The alleged conduct furthered no governmental interest and was not related in any meaningful way to Officer Smith's status as a police officer.  Moreover, the consensual sexual intercourse was not aided "by an indicia of actual or ostensible authority."

There was no threat of the use of his power as a police officer.  There was no threat of prosecution, no threat of violence, or use of power of the state.  At most, there was an offer to pay for the ticket.  While Plaintiff alleges Officer Smith offered to fix or change the ticket, she also admitted he said he could not do so.  Plaintiff willingly engaged in the act with Officer Smith and cannot demonstrate that Officer Smith's conduct was sufficiently egregious so as to overcome her free will in consenting to this sexual act.  Officer Smith never used his position as a police officer to coerce Plaintiff to have sex with him, instead Plaintiff's testimony establishes that she repeatedly and voluntarily engaged with Officer Smith, ultimately leading to consensual sex in her own vehicle.

In comparison to the above, the Southern District of Ohio determined an officer on duty who engaged in inappropriate sexual acts was not acting under color of state law.  *Harmon*, supra at *7.  In *Harmon*, Deborah Harmon, the plaintiff, met Officer Grizzel through her boyfriend, Dave Bailey, who was Officer Grizzel's supervisor.  *Harmon*, supra at *1.  Harmon and Officer Grizzel interacted on many occasions as a result of the relationship between Grizzel and her boyfriend.

9

*Harmon*, supra at *1.  Through their interaction, the plaintiff did not like Grizzel.  *Harmon*, supra at *1.

One day, Harmon received a page while waiting for Bailey and when she called the number, it was Grizzel.  *Harmon*, supra at *2.  Grizzel told Harmon that he wanted to talk to her about something but didn't want to speak over the phone.  *Harmon*, supra at *2.  Harmon assumed that it was about Bailey and that he might be cheating on her.  *Harmon*, supra at *2.  They arranged to meet at a local park.  *Harmon*, supra at *2.  When Grizzel arrived at the park, he was on duty and driving his police cruiser.  *Harmon*, supra at *2.  Grizzel told Harmon to follow him and drove off, so Harmon followed in her own vehicle.  *Harmon*, supra at *2.  Grizzel pulled into a parking building near the park and instructed Harmon to get into his vehicle but Harmon refused, telling him that they could talk outside or he could get in her vehicle.  *Harmon*, supra at *2.  Harmon asked what Grizzel wanted to tell her but Grizzel said "it's not what I have to tell you, it's what I want to show you."  *Harmon*, supra at *2.  Grizzel then grabbed Harmon's right nipple.  *Harmon*, supra at *2.  Harmon pushed Grizzel's arm away and noticed that Grizzel was holding his penis in his right hand.  *Harmon*, supra at *2.  Grizzel proceeded to ejaculate on himself and Harmon's car.  *Harmon*, supra at *2.  Harmon said she felt threatened because Grizzel had a gun and was acting weird.  *Harmon*, supra at *2.

Harmon filed suit arguing that Grizzel was acting under color of law because (1) he was on duty, in uniform, and in a city police car; (2) Harmon followed Grizzel on the day of the incident out of respect for officer authority; and (3) Grizzel had a gun and handcuffs.  *Harmon*, supra at *6.  The *Harmon* Court determined that Grizzel's actions were in the ambit of personal, private pursuits, deciding that Grizzel's inappropriate sexual acts once inside Harmon's car were purely private conduct.  *Harmon*, supra at *7.

10

With *Harmon* in mind, it is clear that Officer Smith was not acting under color of state law at the time of his sexual interaction with Plaintiff.  On September 21, 2018, Plaintiff *voluntarily* met Officer Smith at Landmark.  (Ex. B, Miller Depo., at pp. 60-64.)  When Officer Smith allegedly offered that Plaintiff could follow him from the restaurant to get money, she responded in an incredulous fashion that she was not going to do that.  (Ex. B, Miller Depo. at pp. 68-69.)  However, she did voluntarily *follow* him from the restaurant in her own car to a bank where he allegedly withdrew money; rather than drive to a place of safety.  (Ex. B, Miller Depo. at pp. 70-71.)  Officer Smith then allegedly asked Plaintiff to follow him somewhere where they could have sex.  (Ex. B, Miller Depo. at pp. 79-80.)  Plaintiff said no, but asked if he had a condom.  (Ex. B, Miller Depo. at p. 80-81.)  Officer Smith said he did not have a condom, but could get one.  (Ex. B, Miller Depo. at p. 81.)  Officer Smith drove to the gas station to get one.  (Ex. B, Miller Depo. at pp. 81-82.)  Plaintiff *followed* him to the gas station where he went in and bought the condom.  Plaintiff allegedly stays in her car.  (Ex. B, Miller Depo. at p. 83.)

After exiting the gas station and buying a condom, Officer Smith tells Plaintiff that she can follow him.  (Ex. B, Miller Depo. at p. 84.)  Plaintiff *does not say no* and decides to *follow* him to go have sex.  (Ex. B, Miller Depo. at pp. 84-85.)  She follows him to a side street, and Officer Smith gets out of his car and asks Plaintiff to get in his car.  (Ex. B, Miller Depo. at p. 85.)  Plaintiff says no and Officer Smith gets in her car.  (Ex. B, Miller Depo. at p. 85.)  She *unlocks* the door for Officer Smith and he gets into the passenger seat.  (Ex. B, Miller Depo. at p. 86.)  Thereafter, they engage in oral sex with Plaintiff sitting in the passenger seat and Officer Smith kneeling on the floorboard facing her.  (Ex. B, Miller Depo. at pp. 86-94.)  Plaintiff alleges that Officer Smith then put a condom and they had sex for a few minutes.  (Ex. B, Miller Depo. at pp. 95-96.)  Officer Smith then leaves in his own car.  (Ex. B, Miller Depo. at p. 97.)  Prior to leaving, he asks Plaintiff

11

if she liked it, and she says yes even though she did not.  (Ex. B, Miller Depo. at pp. 97-98.)  During the events of September 21, 2018, Plaintiff had her cell phone, but at no time did she call 9-1-1 for assistance.  (Ex. B, Miller Depo. at p. 86.)  Despite multiple opportunities to drive to a place of safety or call for the police, Plaintiff chose to follow Officer Smith and have sex with her.  Further, any subjective fear that Plaintiff may have had towards Officer Smith is insufficient to morph his actions into actions "under color of law."

Officer Smith was not acting under color of state law.  As such, there is no need to address if Plaintiff's Fourth and Fourteenth Amendment rights were implicated.  Plaintiff's § 1983 claims against Defendant Smith fail as a matter of law.  Defendant's Motion for Summary Judgment should be granted, and Plaintiff's claims against Defendant Smith should be dismissed with prejudice.

### C.    Plaintiff's Fourth Amendment Claim Fails as a Matter of Law

Even if Plaintiff could establish that Defendant Smith was acting under the color of state law at the time of the alleged sexual interaction between Defendant Smith and herself, her Fourth Amendment claim fails.

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government.  U.S. CONST. amend IV.  However, the Sixth Circuit has consistently held that allegations similar to Plaintiff's are construed as Fourteenth Amendment claims of substantive due process rights, not Fourth Amendment violations.  See *Lillard v. Shelby Cnty. Bd. Of Educ.*, 76 F.3d 716 (6th Cir.1996) (finding that allegations that a teacher touched a student in a sexual manner demonstrated a potential violation of § 1983 based on student's substantive due process right to body integrity); see also *Wilson v. Luttrell*, 230 F.3d 1361 (6th Cir.2000) (unpublished) (holding that sexual abuse by a state actor constitutes a constitutional deprivation under the due process clause sufficient to sustain a § 1983 action).

12

As a result Plaintiff's Fourth Amendment claim fails as a matter of law.

**D.      Plaintiff's Allegations Fails to Set Forth Any Evidence of a Procedural Due Process Claim so that Such a Claim Fails.**

The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend XIV, § 1.  Due process is divided into two separate categories: substantive due process and procedural due process.  Substantive due process mandates that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir.2003).  "Procedural due process claims are concerned not with the deprivation of a constitutionally protected interest in 'life, liberty, or property' but deprivation of those interests without due process of law."  *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 546 (6th Cir.2012).  Plaintiff is not complaining about the adequacy of process for an alleged deprivation.  Plaintiff is not claiming if additional process had been provided the deprivation would be permissible.

Procedural due process is not implicated by Plaintiff's Complaint so that only a claim of substantive due process is at issue.  *See Flottman v. Hickman County*, M.D. Tennessee Case No. 3-09-0770, 2010 WL 4054150 (M.D. Tenn.2010).  As a result, Plaintiff's claim for procedural due process, to the extent one is alleged, fails as a matter of law.

**E.      Even if Officer Smith was Acting Under the Color of State Law, Plaintiff's Substantive Due Process Claim Under the Fourteenth Amendment Fails.**

Assuming arguendo that Officer Smith acted under the color of state law, Plaintiff's claim for substantive due process fails as a matter of law.  To prevail on a substantive due process claim, a plaintiff must prove that she has a fundamental liberty interest implicating Fourteenth Amendment protection and that a defendant's conduct anent said interest was "so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Among the fundamental liberty interests protected by substantive due process is the "right to body integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). This right includes the right to be free from "invasion of…personal security" through sexual abuse. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3rd Cir.1989). Generally, courts have defined conscience shocking conduct as that which offends a sense of justice, runs afoul of the decencies of civilized conduct, or is intended to injure in a manner unjustified by any government interest. *Lewis*, 523 U.S. at 846-50. Consensual intrusions of such liberties do not violate the Constitution. *Doe v. Round Valley Unified School District*, 873 F.Supp.2d 1124 (D. Ariz.2012). Plaintiff is unable to set forth any evidence that her consensual sexual interaction with Officer Smith was so egregious as to shock the conscience to establish a substantive due process claim.

Plaintiff fails to establish any evidence that she did not have the capacity to consent to the sexual interaction with Officer Smith or that Officer Smith exhibited such control over her person to coerce her into that interaction. Plaintiff's allegations are more similar to those set forth in *Villanueva v. City of Scottsbluff*, D. Neb. Case No. 4:11CV3185, 2014 WL 840634 (D. Neb.2014). In *Villanueva*, the plaintiff met the chief of police through a neighborhood watch group which led to a kiss following a meeting. *Villanueva*, supra at *13. Ms. Villanueva continued to talk, text and communicate with the police chief. *Villanueva*, supra at *13. Eventually, Ms. Villanueva and the police chief engaged in sexual intercourse of two separate occasions at the police chief's lake house. *Villanueva*, supra at *13.

The *Villanueva* plaintiff alleged that the police chief used his position to continue contact with her and coerce her into a sexual relationship. *Villanueva*, supra at *14. Ultimately, the trial

court determined that the plaintiff failed to submit evidence showing that she did not have the capacity to consent.  *Villanueva*, supra at *14.

As in *Villanueva*, Plaintiff fails to establish any evidence that she did not have the capacity to consent to the sexual intercourse with Officer Smith.  Plaintiff's testimony establishes ample opportunity to reject Officer Smith and avoid his alleged advances.  Plaintiff voluntarily agreed to meet with Officer Smith at the Landmark Restaurant.  (Ex. B, Miller Depo. at pp. 60-64.)  Plaintiff **followed in her own vehicle** from the restaurant to the bank where Officer Smith withdrew money and gave it to Plaintiff.  (Ex. B, Miller Depo. at pp. 70-71.)

Plaintiff testified that he asked her to follow him somewhere where they could have sex.  (Ex. B, Miller Depo. at pp. 79-80.)  Plaintiff said no, but then asked Officer Smith if he had a condom.  (Ex. B, Miller Depo. at pp. 80-81.)  He said no, but that he could get one.  (Ex. B, Miller Depo. at p. 81.)  He drove his vehicle to a gas station to get one and **Plaintiff followed him in her vehicle** to the gas station where he went in and bought the condom.  (Ex. B, Miller Depo. at pp. 81-83.)  After exiting the gas station, he told her to follow him, and she did not say no.  (Ex. B, Miller Depo. at pp. 85-85.)

Plaintiff **followed him in her car** to a side street off of St. Clair Avenue.  (Ex. B, Miller Depo. at p. 85.)  Officer Smith got out of his car and asked her to come to his car.  (Ex. B, Miller Depo. at p. 85.)  She said no and **then unlocked her car** for him to get into the passenger seat of her vehicle.  (Ex. B, Miller Depo. at pp. 85-86.)  Plaintiff testified that they exchanged places in her Jeep Compass and Officer Smith performed oral sex on her with her sitting in the front passenger seat and Officer Smith kneeling on the floorboard.  (Ex. B, Miller Depo. at pp. 86-94.)  Officer Smith then put on the condom and they had sex for a few minutes.  (Ex. B, Miller Depo. at pp. 95-96.)  Plaintiff then said she had to go.  (Ex. B, Miller Depo. at p. 95.)  Officer Smith said

15

he wanted to have sex with her again at that time, but she said no and Officer Smith ultimately said he had to go as well.  (Ex. B, Miller Depo. at pp. 95-97.)  Officer Smith then left in his personal vehicle.  (Ex. B, Miller Depo. at p. 97.)

Plaintiff's testimony demonstrates that Officer Smith's conduct fails to amount to sufficient coercion to overcome her free will in consenting to this sexual interaction.  Plaintiff had her cell phone with her the entire time, but never called 9-1-1.  (Ex. B, Miller Depo. at p. 86.)  Her own testimony establishes that Officer Smith's conduct fails to amount to a substantive due process violation.  Plaintiff's testimony demonstrates Officer Smith's conduct does not amount to the level of coercion necessary to establish a claim for substantive due process and her claim fails.

Plaintiff was never in Officer Smith's vehicle.  Officer Smith never went to her house. Plaintiff voluntarily met Officer Smith at the Landmark Restaurant.  Plaintiff entered her own vehicle and followed Officer Smith to the bank for him to get money for Plaintiff.  Plaintiff proceeded to follow Officer Smith in her own vehicle to a gas station for him to purchase a condom.  Plaintiff continued in her own vehicle to a side street location with Officer Smith. Plaintiff then voluntarily unlocked her vehicle and let Officer Smith into the passenger side of her vehicle.  Officer Smith and Plaintiff engaged in sexual intercourse and left after Officer Smith's request to have sex a second time which was rebuffed.  There were no threats by Officer Smith, only offers of assistance and money.

Plaintiff and Officer Smith's interactions leading to sexual intercourse fail to meet the exacting standard that Officer Smith's actions "shock the conscience."  As a result, Plaintiff's claim for substantive due process under Fourteenth Amendment fails as a matter of law.

**F.    Assuming Arguendo that Officer Smith was Acting Under the Color of State Law, He is Entitled to Qualified Immunity.**

Even if the Court determines sufficient evidence exists that Officer Smith acted under the color of law, Officer Smith is entitled to qualified immunity.  Once defendants raise qualified immunity, the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation that every reasonable official would have understood that what he was doing violated that right.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083 (2011).  If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the official is immune.  *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491, 494 (6th Cir.2012).  A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  *Ashcroft*, 563 U.S. at 741.  In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate."  *Ashcroft*, 563 U.S. at 741.  In addition, "[w]e have repeatedly told courts ... not to define clearly established law at a high level of generality," *Ashcroft*, 563 U.S. at 742, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.  *Plumhoff v. Rickard*, 572 U.S. 765, 778-779, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014).

> "Qualified immunity attaches when an official's conduct " 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "  *Mullenix v. Luna,* 577 U.S., at —— – ——, 136 S.Ct. 305, 308 (2015).  While case law " 'does not require a case directly on point' " for a right to be clearly established, " 'existing precedent must have placed the statutory or constitutional question beyond debate.' "  *Id.,* at ——, 136 S.Ct., at 308.  In other words, immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.' "  *Id.*  In the last five years, the Supreme Court has issued a number of opinions reversing federal courts in qualified immunity cases.

17

See, *e.g., City and County of San Francisco v. Sheehan,* 575 U.S. ——, ——, n. 3,
135 S.Ct. 1765, 1774, n. 3 (2015) (collecting cases).

*See White v. Pauly,* -- U.S. --, 137 S.Ct. 548, 555, 196 L.Ed.2d 463 (2017); *Callahan v. Pearson,*
555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  "Clearly established law" should not
be defined "at a high level of generality" and the clearly established law must be "particularized"
to these facts of the case.  *Ashcroft*, 563 U.S. at 742; *see also Anderson v. Creighton,* 483 U.S.
635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  Otherwise, "[p]laintiffs would be able to convert
the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging
violation of extremely abstract rights." *Anderson*, 483 U.S. at 640.

Federal law clearly establishes that consensual sexual relationships between citizens and
police officers do not violate the constitution.  *Round Valley Unified School District*, supra at 1124.
Even utilizing Plaintiff's version of the events, an officer would have had an objectively reasonable
belief that Plaintiff consented to the sexual intercourse with Officer Smith so that he is entitled to
qualified immunity.  Here, the interactions between Officer Smith and Plaintiff occurred following
Officer's Smith's shift on the day in question.  (Ex. A, Smith Depo. at p. 95.)  Plaintiff voluntarily
met with him at the Landmark Restaurant.  (Ex. B, Miller Depo. at pp. 60-64.)  She then voluntarily
followed Officer Smith in her vehicle to the bank where he withdrew money to give to her.  (Ex.
B, Miller Depo. at pp. 70-71.)  After initially saying no to Officer Smith's request to have sex, she
asked him if he had a condom.  (Ex. B, Miller Depo. at pp. 80-81.)  When he said he could get
one, Plaintiff voluntarily followed him, in her own vehicle, to a gas station to purchase one.  (Ex.
B, Miller Depo. at p. 83.)  After Officer Smith bought the condom, Plaintiff, again in her own
vehicle, followed him to a side street.  (Ex. B, Miller Depo. at pp. 84-85.)  Plaintiff then refused
to get into Officer Smith's vehicle, but unlocked the passenger side of her vehicle to let him in the
car.  (Ex. B, Miller Depo. at pp. 85-86.)

A reasonable public official in Officer Smith's position would have an objectively reasonable belief that Plaintiff voluntarily consented to the sexual intercourse and that that sexual interaction comports with clearly established law.  Plaintiff cannot establish that existing precedent places the constitutional question beyond debate, and Officer Smith is entitled to qualified immunity.

Based on the above, Plaintiff is unable to set forth any clearly established case law that would inform every reasonable official in Officer Smith's position that what he did was a violation of Plaintiff's constitutional rights.

## IV.  CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment should be granted, and all claims against him should be dismissed with prejudice.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/John T. McLandrich*
JOHN T. MCLANDRICH  (0021494)
TERENCE L. WILLIAMS  (0081363)
CHRISTINA M. NICHOLAS  (0091248)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    jmclandrich@mrrlaw.com
             twilliams@mrrlaw.com
             cnicholas@mrrlaw.com

Counsel for Defendant Tyler Smith