# TABLE OF CONTENTS

## F-2017-006

- CONTROL LOG
- SUBSTANTIVE INVESTIGATION
  - COMMUNICATION RECORDS & VIDEO-RECORDINGS
- COMPLAINT
  - OHLEG OF MS. RUSHIN
  - NOTES FROM STATEMENT
    - Cellular Telephone Records
  - VIDEO-RECORDINGS
  - IDENTIFICATION OF PTL. SMITH
  - PREVIOUS CALLS FOR SERVICE
    - 2016-37718
    - 2016-36432
    - 2013-25424
- PTL. SMITH STATEMENT
  - June 10, 2017 Activities



EXHIBIT
A
1:19-cv-1080



PLAINTIFF'S DEPOSITION
EXHIBIT
6
COLE

SH-000789

- 2017-17461
- 2017-17457
- 2017-17456
- 2017-17439
- 2017-17438
- 2017-17436
- 2017-17434
- 2017-17432
- 2017-17428
- 2017-17427
- 2017-17425
  - July 20, 2016 Activities
    - 2016-22881
    - 2016-22879
    - 2016-22870
    - 2016-22886

# • LEADS INFORMATION

# • OHLEG INFORMATION

# • GENERAL ORDERS

# • EMAILS

SH-000790

- EMAIL

SH-000791

# CONTROL LOG

## F-2017-006

SH-000792

SHAKER HEIGHTS POLICE DEPARTMENT
INTERNAL AFFAIRS INVESTIGATION CONTROL LOG

## Control Number: <u>F-17-006</u>

Alleged Violator Information:

|        |        |
|--------|--------|
| Name:  | Tyler Smith (PTL. SMITH) |
| Rank:  | Patrolman |
| Badge: | 32 |
| Assignment: | Uniform Services/B Platoon |

Report Received on:  (Date) <u>June 13, 2017</u>     (Time)  1600 hours

Nature of Alleged Violation:     Complainant, Ms. Celeste Rushin alleges that, ON TWO (2) OCCASIONS, Patrolman Tyler Smith #32, detained her without cause, made inappropriate comments to her and/or otherwise harassed her.

Complainant Information:

|        |        |
|--------|--------|
| Name: | **Celeste Rushin** |
| Address: | 3657 Lattimore Road |
|  | Shaker Heights, Ohio 44120 |
| **Phone:** | ( ██████████ |

Completion Date of Investigation/Inquiry:         August 18, 2017

Date and Nature of the Final Action by the Chief of Police, Officer in Charge, or Supervisor:

c:     Accreditation

SH-000793

# SUBSTANTIVE INVEST

## F-2017-006

SH-000794

**FROM THE OFFICE OF TRAINING AND INTERNAL AFFAIRS**
**CONFIDENTIAL**
**MEMORANDUM**

**TO:**       Jeffrey N. DeMuth, Chief of Police

**FROM:**     Commander John Cole, Internal Affairs Officer

**DATE:**     **August 18, 2017**

**SUBJECT:**  Formal Internal Affairs Investigation F-2017-006

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

On **TUESDAY, JUNE 13, 2017,** at approximately 1600 hours, Administrative Assistant Soley O'Malley, hereinafter, "MS. O'MALLEY," hand-delivered me a "Confidential Memorandum" (MEMO) from Chief of Police Jeffrey DeMuth, hereinafter, "CHIEF DEMUTH," regarding a complaint by a Ms. Celeste Rushin, hereinafter, "MS. RUSHIN." CHIEF DEMUTH's MEMO identified that his office had received MS. RUSHIN's complaint on **Tuesday, June 13, 2017.**

Immediately thereafter, I reviewed MS. RUSHIN's complaint form, which identified that she had executed it on **Saturday, June 10, 2017,** and read, in pertinent part, as follows:

- Patrolman Tyler Smith #32, hereinafter, "PTL. SMITH," whom MS. RUSHIN identified as "Officer Tyler," puller her over, "about a year ago;"
  - MS. RUSHIN reported that PTL. SMITH started following behind her, without headlights activated, while she was operating her 2000 Lexus RX300, near the intersection of Chagrin Boulevard and Warrensville Center Road;
  - MS. RUSHIN reported that PTL. SMITH pulled her over, i.e., "said pull over," at/near the intersection of South Woodland & Warrensville Center road;
  - MS. RUSHIN reported that PTL. SMITH told her to pull into the BP Station, i.e. 20420 Chagrin Boulevard, where he exited his vehicle and notified MS. RUSHIN that her back tail light was out; and, then requested for her to step out of her vehicle;
  - MS. RUSHIN reported that it was approximately 0300 hours, she was in her pajamas; and, PTL. SMITH inquired about her age, employment and provided her his telephone number
- MS. RUSHIN reported that on **June 10, 2017 at 2110 hours,** PTL. SMITH briefly activated his siren and pulled her over near her home on Lattimore Road ;
- MS. RUSHIN reported that PTL. SMITH asked her if she remembered him; and, after notifying him that she did not,  she notified him that she had a boyfriend; AND

---

August 18, 2017|                          Jeffrey N. DeMuth, Chief of Police    1

- MS. RUSHIN reported that she believed that PTL. SMITH was attempting to flirt with her

I then examined MS. RUSHIN's complaint more closely wherein I observed that she had executed the complaint form on **Saturday, June 10, 2017 at 2221 hours.** As such, I reviewed the Department's Closed Circuit Television system's recordings captured around that time wherein I observed a female of color, petit stature and wearing a blue and white dress, at the Police Information Unit window and later, at the desk. I also observed a male and female of color, who appeared to be with the female previously described. I downloaded, and added these recordings to the investigation.

In accordance with General Order 5501 & 5502 §IV (A) (1) (b), (c) & (e), i.e., "Allegations involving morals and…serious misconduct and serious allegations which would bring disfavor upon the department," I prepared a Control Log and designated this investigation as F-2017-006. In addition, I reviewed the Department's New World Systems computer aided dispatch (CAD) and Law Enforcement Records Management system wherein I confirmed that PTL. SMITH was working on B Platoon on June 10, 2017.

## INVESTIGATION

As I had partially corroborated that MS. RUSHIN had responded to the Police Information Unit on **June 10, 2017**; but, was unclear from her complaint form whether she had been "detained," albeit briefly, which might trigger a recording; or, for that matter, whether the incident occurred on the same date, I conducted a cursory review of the recordings on the Shaker Heights Police Department's (SHPD) Digital Mobile Video Audio Recording System (DMVARS), hereinafter referred to as, "L3." While the L3 system did memorialize that PTL. SMITH had made recordings on June 10th, I did NOT observe any recordings at/around the time MS. RUSHIN would have been stopped. (Emphasis added)

On **THURSDAY, JUNE 15, 2017**, I conducted a review of the electronic records of PTL. SMITH's activities on **June 10, 2017** in order to gain a more comprehensive understanding of where his location was in relation to MS. RUSHIN's residence. I learned that PTL. SMITH had conducted a traffic stop at/near the location of Walgreens, located in the 16000 block of Chagrin Boulevard. (See Incident #2017-17436)

In addition, I learned that PTL. SMITH had then responded to the intersection of East 146 street and Kinsman Road in the City of Cleveland to assist another officer on a traffic stop, and then responded to 2700 Park drive in the City of Shaker Heights, to assist a stranded motorist. (See Incident Numbers 2017-17438 & 2017-17439) I then reviewed the electronic records related to MS. RUSHIN and her residence. In conducting the aforementioned searches, I learned that MS. RUSHIN was a victim of a theft offense in calendar year 2013.

---

2    Jeffrey N. DeMuth, Chief of Police|                              August 18, 2017

ON **FRIDAY, JUNE 16, 2017,** as I still had NOT corroborated the date of the first traffic stop, I conducted a review of the Communication Center, i.e., "DISPATCH," recordings, hereinafter, "NICE," to determine if MS. RUSHIN's operator/vehicle information was ever requested by PTL. SMITH. I was able to confirm that PTL. SMITH had requested information on a Chevrolet Monte Carlo, "HBG5101." (See Police 1 Radio 85457PM (Monte Carlo))

ON **MONDAY, JUNE 19, 2017,** using the telephone number that she provided on the complaint form, I contacted MS. RUSHIN. After introducing myself and identifying my assignment, I requested a statement. MS. RUSHIN and I agreed to meet at her residence on **Tuesday, June 20, 2017** at 1300 hours.

In addition, as MS. RUSHIN had identified in her complaint form that PTL. SMITH had given her his personal telephone number, I specifically inquired as to whether MS. RUSHIN was still in possession the telephone number. MS. RUSHIN answered in the affirmative. I then requested MS. RUSHIN to have any and all information that would assist me in this investigation at our scheduled interview.

ON **TUESDAY, JUNE 20, 2017,** as I had never met MS. RUSHIN but had observed CCTV video-recordings of a female of color at the SHPD at/around the same time that MS. RUSHIN would have filed her complaint, I conducted an Ohio Law Enforcement Gateway (OHLEG) search for MS. RUSHIN and printed the results. As I also believed that PTL. SMITH was the "Officer Tyler" identified in MS. RUSHIN's complaint, I printed up individual personnel photographs of the nine (9) African American males assigned to the SHPD for identification purposes.

At approximately 1300 hours, I responded to MS. RUSHIN's home where I met with MS. RUSHIN's mother, later identified as Mrs. ▮▮▮▮▮▮▮ hereinafter, ▮▮▮▮▮▮ who reported that although MS. RUSHIN was NOT home, she would have her call me. Upon returning to the SHPD, I learned that I had received two (2) telephone calls from MS. RUSHIN, apologizing for NOT being available, and requesting that I contact her immediately.   I called MS. RUSHIN and we agreed to meet at her residence at 1515 hours that same day.

At approximately 1513 hours, I arrived at MS. RUSHIN's residence. MS. RUSHIN, who was outside, introduced herself and invited me into her home. Once inside, I confirmed her pedigree information and explained my role as the Internal Affairs Officer; while also identifying the expectations and limitations of my assignment.

Shortly thereafter, I inquired about the race of PTL. SMITH. MS. RUSHIN Identified that she believed PTL. SMITH is African-American. I then handed MS. RUSHIN the nine (9) photographs and asked her if she believed any of the individuals in the photographs were PTL. SMITH. MS. RUSHIN identified PTL. SMITH; and, signed and dated the back of the photograph.

---

August 18, 2017|                              Jeffrey N. DeMuth, Chief of Police   ▮▮▮ 3

I then interviewed MS. RUSHIN, the substance of which is, IN FURTHERANCE OF AND IN ADDITION TO, the information she provided in her complaint form: (Emphasis added)

- MS. RUSHIN reported that she was operating a Lexus RX300 which she had stopped operating in August, 2016;
- MS. RUSHIN reported that she had dropped off Ms. ▮▮▮▮▮▮▮▮ telephone number: ▮▮▮▮▮▮▮▮ whom she had picked up from working at the Thistledown Racino in June or July, 2016;
- MS. RUSHIN reported that PTL. SMITH ordered her to pull over into the BP gas station after notifying her that her license plate light was out;
- MS. RUSHIN reported that PTL. SMITH never asked for her driver's license;
- MS. RUSHIN reported that PTL. SMITH requested that she exit her vehicle; and, although she was in pajamas and felt uncomfortable, she exited her vehicle and observed that her license plate light was out; AND
- MS. RUSHIN reported that PTL. SMITH notified her that his name was, "Tyler," and that he was "26 years old;"
- MS. RUSHIN reported that PTL. SMITH inquired as to whether she had a boyfriend;
- MS. RUSHIN reported that PTL. SMITH inquired about her age and occupation;
- MS. RUSHIN reported that PTL. SMITH provided his telephone number to her orally, she accepted his telephone number in order to be released from the stop; and, she entered the telephone number into her cellular telephone;
- MS. RUSHIN reported that PTL. SMITH told her to call him and notified her that they could, "hang out;" AND
- MS. RUSHIN reported that she NEVER contacted PTL. SMITH

While taking this information, I asked MS. RUSHIN for a copy and/or other evidence of PTL. SMITH's personal telephone number. MS. RUSHIN began scrolling through her telephone.

After several moments, she notified me that she was unable to locate PTL. SMITH's telephone number. MS. RUSHIN then notified me that she had purchased a new cellular telephone from AT & T in September of 2016. However, she asserted that she had MAINTAINED the same telephone number, i.e., (216)▮▮▮▮▮▮ but also expressed that as she never called PTL. SMITH, she may NOT have saved his contact information. (Emphasis added)

MS. RUSHIN then reported the following:

- On **June 10, 2017,** she was operating a 2016 black, Mazda CX-5 bearing Ohio license plate #GXK9357;
- PTL. SMITH had briefly activated his overhead lights and air horn, but did NOT leave either on; (Emphasis added)
- PTL. SMITH rolled down his vehicle's window, but NEVER left his vehicle; (Emphasis added)

---

▮▮ 4   Jeffrey N. DeMuth, Chief of Police|                    August 18, 2017

- PTL. SMITH never asked her for her driver's license;
- PTL. SMITH identified facts about the previous traffic corroborating that he remembered her occupation, age and vehicle;
- PTL. SMITH inquired as to why she had NOT called him; (Emphasis added)
- PTL. SMITH stated, "Do you still have a boyfriend?" to which she answered in the affirmative;
- PTL. SMITH inquired as to whether she lived at the location where they were stopped; AND
- MS. RUSHIN did NOT recall if there was anyone else out on the street when the stop occurred, but that she believed there was not

I ended our interview by inquiring about the license plates of the vehicles she was operating. MS. RUSHIN reported that she would call me with that information. I also inquired as to whether PTL. SMITH had attempted to contact MS. RUSHIN through a social media outlet and/or another law enforcement officer. MS. RUSHIN responded in the negative. I closed my interview by notifying MS. RUSHIN of the action to take if she were to be contacted by PTL. SMITH during this investigation.

**On WEDNESDAY, JUNE 21, 2017,** as I had been unsuccessful in recovering video-recordings and/or Dispatch records of a traffic stop; and, MS. RUSHIN had acknowledged that she had viewed, i.e. no rear taillight illumination) PTL. SMITH's probable cause for the first stop, I contacted the administrative services of the OHLEG and Law Enforcement Automated Data Systems (LEADS) confidential search platforms wherein I requested identification of ANY law enforcement officer who had conducted a search on MS. RUSHIN from the period of **April 1, 2016 through June 15, 2017.** (See. LEADS/OHLEG REQUESTS)

**ON THURSDAY, JUNE 23, 2017,** I spoke with Jenny Higdon, hereinafter, "MGR. HIGDON, from LEADS wherein I narrowed the scope of my written request, while acknowledging that there COULD BE a possible LEADS violation. ON **FRIDAY, JUNE 24, 2017,** I received notification from LEADS that they had results from my request and that they would be sending me those results in writing.

Later in the date, I downloaded the results from LEADS. The Department's TAC Coordinator Senior Dispatch Karen Cendrowski, hereinafter, "SDISP. CENDROWSKI!" identified the following SHPD members who had requested MS. RUSHIN's LEADS information during the targeted period:

- On April 14, 2016 at 201148 hours, Patrolman Ryan Sidders #66 conducted a LEADS search on vehicle bearing Ohio license plate #GIS1897;
- On July 20, 2016 at 014318 hours, PTL. SMITH conducted a LEADS search on vehicle bearing Ohio license plate #GIS1897;
- On January 17, 2017 at 120452 hours, Patrolman Benjamin Ward (PTL. WARD) conducted a LEADS search on vehicle bearing Ohio license plate #GXK9357;
- On May 4, 2017 222735 hours, Patrolman Shondor Thomas #53 conducted a LEADS search on vehicle bearing Ohio license plate #GXK9357;

SH-000799

- On June 10, 2017 at 210635 hours, PTL. SMITH conducted a LEADS search on vehicle bearing Ohio license plate #GXK9357;

In addition, SDISP. CENDROWSKI identified that MS. RUSHIN's information had been requested on twelve (12) other occasions during the targeted period by members of four (4) different police agencies. (See LEADS Archive and Retrieval Multiple Details Report)

As reflected above, during my review of PTL. SMITH's LEADS information, I learned that he had made a request for information on MS. RUSHIN's vehicle on **Wednesday, July 20, 2016 at approximately 0143 hours, but NOT MS. RUSHIN.** (Emphasis added) However, in reviewing the NICE recordings, I was unable to locate any audio-recording of PTL. SMITH requesting information from the Communications Center about MS. RUSHIN's vehicle, i.e. GIS1897; or, that he had/was detaining MS. RUSHIN. (See **July 20, 2016** audio-recordings)

On **MONDAY, JULY 3, 2017,** I received an electronic correspondence from Michelle Y. Roach-Haver, hereinafter, "SPECIALIST ROACH-HAVER" of OHLEG notifying me that I would need additional information from my Agency Coordinator, Sergeant Troy Allison #86, hereinafter, "SGT. ALLISON," in order to act on my information request on PTL. SMITH. (See Electronic Records) Shortly thereafter, I received the detailed telephone records of MS. RUSHIN. (See MS. RUSHIN Cellular Telephone Records)

On **MONDAY, JULY 10, 2017,** I received the response to my informational request from SPECIALIST ROACH-HAVER wherein I learned that PTL. SMITH had NOT requested social security information and/or driver's license information on MS. RUSHIN on either July 20, 2016 and/or June 10, 2017; or, during the period in between those dates.

On **TUESDAY, JULY 11, 2017 through WEDNESDAY, AUGUST 2, 2017,** I reviewed the records within the New World System from PTL. SMITH's hire date, i.e. **February 2, 2015 through August 2, 2017.** I learned that PTL. SMITH had NOT responded, nor had any calls for service to MS. RUSHIN's address on Latimore. (Emphasis added) In addition, I spoke with MS. RUSHIN and notified her that I would be consulting with the Prosecuting Attorney to determine whether there was probable cause that PTL. SMITH had committed a crime.

On **THURSDAY, AUGUST 3, 2017,** in an effort to determine whether PTL. SMITH should be issued his constitutional rights or provide a compelled statement, I met with Chief Prosecuting Attorney C. Randolph Keller, hereinafter, "CHIEF KELLER," wherein I provided the details learned, which included:

- PTL. SMITH had entered MS. RUSHIN's vehicle information into the LEADS database on **Wednesday, July 20, 2016;**
  - MS. RUSHIN had admitted that there was probable cause (equipment violation) to stop her vehicle;

- o PTL. SMITH had NOT entered MS. RUSHIN's driver's license information into OHLEG or LEADS;
- o There were no records of the encounter in CAD, Records, NICE Recordings and/or L3
- • PTL. SMITH had entered MS. RUSHIN's vehicle information into LEADS on **Saturday, June 10, 2017;**
  - o PTL. SMITH had NOT entered MS. RUSHIN's driver's license information into OHLEG or LEADS;
  - o There were no records of the encounter in CAD, Records, NICE Recordings and/or L3;
- • There was no evidence that PTL. SMITH had contacted and/or stalked MS. RUSHIN in between the two (2) stops

Critically weighing this information, CHIEF KELLER determined that PTL. SMITH should be compelled to make a statement.

On **THURSDAY, AUGUST 10, 2017**, PTL. SMITH was compelled to make a statement, the substance of which is as follows:

- • PTL. SMITH reported that he tested his DMVARS equipment prior to going on the road on both **July 20, 2016** and **June 10, 2017;**
- • PTL. SMITH has had the same cellular telephone number, i.e. ███████ **for the past two (2) years;**
- • As he has moved, PTL. SMITH has changed the telephone number of his landline within the two (2) year period;
- • PTL. SMITH admitted that he has had two (2) encounters, WHILE ON DUTY, with MS. RUSHIN; (Emphasis added)
- • PTL. SMITH admitted entering MS. RUSHIN's vehicle's information into his Mobile Data Computer on **July 20, 2016** for a rear plate violation;
- • PTL. SMITH corroborated MS. RUSHIN's representations of the **July 20, 2016** encounter, clarifying that the vehicle's owner's information was "clean," i.e. no wants or warrants, he did NOT activate his overhead lights or siren; and, he provided MS. RUSHIN his cellular telephone number AFTER MS. RUSHIN requested his card; (Emphasis added)
- • PTL. SMITH did NOT request MS. RUSHIN's cellular telephone information; (Emphasis added)
- • PTL. SMITH reported that he did ask MS. RUSHIN if she was a Shaker Heights resident;
- • PTL. SMITH reported that he did NOT inquire about MS. RUSHIN's relationship status; (Emphasis added)
- • PTL. SMITH reported that MS. RUSHIN volunteered her relationship status during their second encounter and he clarified to her that she may have misunderstood his intentions in providing her his cellular telephone number;
- • PTL. SMITH reported that he did NOT manually turn on his DMVARS equipment as neither encounter was a traffic stop;

SH-000801

- PTL. SMITH reported that he NEVER stated to MS. RUSHIN, "Good luck with your boyfriend;"
- PTL. SMITH reported that he has NEVER requested any member of the Shaker Heights Police Department to obtain information on MS. RUSHIN; (Emphasis added)
- PTL. SMITH reported that he has had similar encounters with other citizens where his purpose was to educate and NOT to enforce the traffic law; (Emphasis added)

On **FRIDAY, AUGUST 11, 2017**, I contacted Ms. Narissa Williams and learned that she was NOT in the vehicle when MS. RUSHIN was stopped on **July 20, 2016**; and, that MS. RUSHIN had contacted her and expressed her concerns with PTL. SMITH's actions after the stop. (Emphasis added)

### FINDINGS

Carefully reviewing the full investigation, which included a comprehensive review of PTL. SMITH's OHLEG and LEADS records, L3 System, NICE Recordings, and interviews form PTL. SMITH and MS. RUSHIN, I respectfully find the following:

- PTL. SMITH did have probable cause as well as did detain MS. RUSHIN's vehicle on **Wednesday, July 20, 2016**;
- PTL. SMITH did provide his personal cellular telephone number to MS. RUSHIN;
- PTL. SMITH did have a conversation with MS. RUSHIN on Saturday, **June 10, 2017** near her residence;
- There are no independent witnesses to either encounter;
- PTL. SMITH has NOT conducted any OHLEG and/or LEADS checks on MS. RUSHIN during the period of **February 2, 2015 through July 10, 2017**; (Emphasis added)
- PTL. SMITH has NOT been deployed to, and/or responded to MS. RUSHIN's residence during his tenure as a Shaker Heights police officer
- MS. RUSHIN did NOT have a boyfriend during the **July 20, 2016** encounter, but she was interested in another male during/after the July 20., 2016 encounter; (Emphasis added)
- MS. RUSHIN did NOT call PTL. SMITH; (Emphasis added)
- PTL. SMITH has NOT called MS. RUSHIN; (Emphasis added)
- PTL. SMITH was engaged during both encounters;
- There are no electronic recordings of any encounters between PTL. SMITH and MS. RUSHIN; AND
- PTL. SMITH has had NO similar allegations levied against him during his employment as a Shaker Heights police officer

---

Jeffrey N. DeMuth, Chief of Police|                              August 18, 2017

SH-000802

## CONCLUSIONS

Carefully and critically evaluating the substantive findings above, coupled with the Department's Vision and Mission statements, i.e., "…partnership with the community…"I respectfully conclude that this incident is a misunderstanding.  While MS. RUSHIN is convinced that PTL. SMITH was flirting with her, there is no doubt that PTL. SMITH had probable cause to stop MS. RUSHIN for her rear plate illumination violation on **Wednesday, July 20, 2016.**

Instead of citing and releasing her, he requested MS. RUSHIN to exit her vehicle and observe the violation in a lighted business area. He even took the extra action of directing her to a business that could correct the violation.

Moreover, PTL. SMITH did NOT request or obtain information on MS. RUSHIN individually, only as owner of the vehicle. (Emphasis added) PTL. SMITH did NOT ask for MS. RUSHIN's cellular telephone number, nor call her. Although NOT recommended for many reasons (ALL SHARED WITH PTL. SMITH BY ME DURING HIS STATEMENT), PTL. SMITH provided his personal cellular telephone number because he had NOT been issued a business card. (Emphasis added)

On **Saturday, June 10, 2017**, PTL. SMITH who averages more than five hundred (500) police citizen counters BI-MONTHLY since the commencement of his employment, encountered MS. RUSHIN in a totally different vehicle; and, in a totally different area, that turned out to be her residence. As evidenced by her statement about being in a relationship, there is no doubt that PTL. SMITH, who has a quirky, law enforcement memory (during his statement, he attempted to remember the color of MS. RUSHIN's vehicle from more than 1 year ago without me providing that information to him) provided information to MS. RUSHIN that she perceived as being flirtatious. Without any independent witnesses, coupled with Management's directive to meet, educate and engage our community; especially our residents, there is equally enough information revealed during this investigation that leads me to believe that PTL. SMITH questions about personal information MS. RUSHIN had previously provided were intended to assist MS. RUSHIN refresh her recollection, NOT solicit a date. (Emphasis added)

## RECOMMENDATIONS

Based upon the foregoing, I am respectfully recommending that this investigation be CLOSED and designated UNFOUNDED as to improper conduct. Based upon my training and experience, there was nothing that I noted from my interrogation training and/or stated by MS. RUSHIN and/or PTL. SMITH that would lead me to believe that he had ill motives; or, was being flirtatious during either encounter.

---

August 18, 2017|                    Jeffrey N. DeMuth, Chief of Police    9

However, as General Order 8303 §II (A) (4) (a) requires uniformed police officers to operate their DMVARS equipment when they are conducting traffic enforcement (See 2017-22870), I respectfully recommend that PTL. SMITH receive counseling on when to active his body camera. Although not dispositive, body camera recordings could have been helpful.

10  Jeffrey N. DeMuth, Chief of Police|                    August 18, 2017

SH-000804