IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| QUEEN TIERRA R. MILLER, | ) | CASE NO.  1:19 CV 1080 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CITY OF SHAKER HEIGHTS, OHIO, *et al.*, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

This matter is before the Court on Defendant Tyler Smith's Motion for Summary
Judgment (ECF #22), and Defendant City of Shaker Heights' Motion for Summary Judgment
(ECF #26).  Plaintiff filed a Brief in Opposition to both motions.  (ECF #28, 29).  Defendants
each filed a Reply in support of their respective motion.  (ECF #30, 31).   Having considered all
of the parties' submissions, as well as the relevant evidence and applicable law, this Court finds
that Defendant City of Shaker's Heights Motion for Summary Judgment should be GRANTED,
and Defendant Tyler Smith's  Motion for Summary Judgment should be GRANTED in part and
DENIED in part.

**Facts and Procedural History**[1]

Plaintiff, Ms. Miller, filed a Complaint asserting that her Fourth and Fourteenth Amendment rights, were violated by Officer Smith, including, but not limited to, the right to privacy, body integrity, and procedural and substantive due process. Ms. Miller also brings a Monell claim against the City of Shaker Heights, Ohio for failure to train and to enforce policies that she claims could have prevented the alleged violations of her constitutional rights.

It is undisputed that in the early morning hours of September 21, 2018, Ms. Miller's car was pulled over by Defendant Tyler Smith, a police officer employed by the City of Shaker Heights, for a suspected window tinting violation.   Though she owned the vehicle, Ms. Miller was not driving when the car was pulled over because she was not insured.  (Miller Depo. at 21, ECF #24).   Her friend, who was driving, had a suspended license.  Both the driver and Ms. Miller also had outstanding warrants.[2]  Ms. Miller was issued a citation for "wrongful entrustment" for allowing her friend to drive the car without a valid license.[3]  She was asked to write her phone number and current address on the ticket.  The encounter ended around 4:00

---

[1]

Except as otherwise cited, the factual summary is based on the parties' statements of fact and deposition transcripts and does not constitute a finding of fact by this Court.  Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party and accepted as true only for purposes of determining the summary judgment motions.

[2]

At one point during the stop Ms. Miller was being handcuffed because of the outstanding warrant. (Miller Depo. at 39-40, ECF #24).

[3]

Before the ticket was issued, a second officer arrived as back-up.  Officer B. Meredith actually issued and signed the ticket, at the direction of Officer Smith.

-2-

a.m.[4] Officer Smith's shift ended at approximately 5:00 a.m..

The parties disagree on nearly everything that occurred after this point.  For purposes of this opinion only, the accounts will be construed in the light most favorable to Plaintiff, the non-moving party, as required under the summary judgment standard.  According to Ms. Miller, shortly after 5:00 a.m. she received a series of phone calls from an unknown number.  After the third or fourth call, she answered.  (Miller Depo. at 52-53, ECF #24).  The caller identified himself as Officer Smith, stated that he should not have given her the ticket and that he was near her home.  He asked if she was at home and if he could come over.  He also asked if she stayed alone.  She refused his request to come over.  (Miller Depo. at 54-55, ECF #24).  Officer Smith asked her is she wondered how he got his number, and then told her he got it off the ticket.  Officer Smith asked if they could meet and talk, and told her could make her ticket go away.  (Miller Depo. at 57, ECF #24).  After some back and forth, Ms. Miller  agreed to meet him at a restaurant for breakfast.  (Miller Depo. at 60-62, ECF #24).

According to Ms. Miller, once at the restaurant, Officer Smith expressed his apologies for issuing her the ticket and asked if she would sleep with him if he could change the ticket.  She said no.  He then said he would pay for the ticket or fix it and asked again if she would sleep with him.  She again said no.  Ms. Miller testified that Officer Smith then said "I want to change it, but will you sleep with me, like are you going to sleep with me?" (Miller Depo. at 63-67, ECF

---

[4]

All parties were at the scene of the stop for an extended period of time, as neither Ms. Miller nor the other occupant of the car were legally able to drive home.   Further, once someone arrived to drive them the vehicle would not start, and Ms. Miller had to call another friend to come and jump-start the vehicle. (Miller Depo. at 37-42, ECF #24).

#24).  He then offered to go get the money from an ATM to pay for the ticket if she would

follow him.  She initially refused, but then did follow him to the ATM and accepted $100.00.

The cost of the ticket was $250.00, but Officer Smith said $100.00 was all he could take out at

the time, and he would give her the rest later after he got paid.  (Miller Depo. at 68-74, 115, ECF

#24).  He then asked her again to have sex with him.  Ms. Miller testified that she again refused,

but asked if he had a condom.  (Miller Depo. at 80-81, ECF #24).  He stated that he did not have

one, and she followed him to a gas station where he purchased one, and then followed him to a

side street where he asked her to get into his car.  (Miller Depo. at 82-84, ECF #24).  Ms. Miller

refused to get in his car, but allowed him to get into hers.  (Miller Depo. at 85-86, ECF #24).  She

moved into the passenger seat and she claims that he then asked if he could perform oral sex on

her.  She shook her head no and at, at least at first, tried to resist.  (Miller Depo. at 88, 91-92,

ECF #24).  He placed his gun on the dashboard and performed oral sex on her, and then

penetrated her.  (Miller Depo. at 86, 94-95, ECF #24).

     Ms. Miller claims that during this encounter Officer Smith was wearing his uniform, with

a dark hoodie zipped over his uniform top, and he was carrying handcuffs and a weapon.  (Miller

Depo. at 76-78, 87-88, ECF #24).  She testified that she was afraid that Officer Smith would

harm her or she would suffer retaliation from the police if she declined to have sex with him.

She also testified that she felt terrified, but also feared she could be arrested for driving without

insurance if she called the police.  (Miller Depo. at 75-77, 92, ECF #24).  She admits that Officer

Smith made no direct threat of harm, legal action or other consequence if she declined, but also

indicated that she was intimidated because Officer Smith knew where she lived, was in a position

of authority, would be believed over her if anything happened, and could kill her and give any

story he wanted.  (Miller Depo. at 76-77, 147-52, ECF #24).  She also noted that her fear was related to the fact that he had already acted outside the boundaries of his position by calling her and telling her he could fix her ticket. (Miller Depo. at 151, 155, ECF #24).  In addition, Officer smith placed his gun on the dashboard of the car during the sexual encounter, which in her mind implied a threat.  Her fear was heightened by the fact the she lived alone with her young son.[5] (Miller Depo. at 153, ECF #24).  She also believed, based on things he had said during the stop, that Officer Smith had been following her on social media prior to her being pulled over. (Miller Depo. at 37-45, ECF #24).

Following the encounter described above, Ms. Miller and Officer Smith communicated several more times over the course of a few weeks.  (Miller Depo. at 99-103, ECF #24).  The communications were directed at setting up a place and time for Officer Smith to pay Ms. Miller an additional amount to help her pay off her traffic ticket.   (Miller Depo. at 99-135, ECF #24).  He never showed up at her house or her place of employment, or anywhere else unexpectedly. (Miller Depo. 104-05, ECF #24).  Later in October, Officer Smith did meet up with Ms. Miller and gave her additional money to pay the ticket.  They had no further interaction after this meeting.  (Miller Depo. at 138, 141-42, ECF #24).  Ms. Miller later reported the above information to her attorney who relayed a complaint to the City of Shaker Heights.  (Miller Depo. at 158-59, ECF #24).  The "wrongful entrustment" charge was eventually dropped, and Officer Smith was investigated.  At some point he was put on paid administrative leave, but, as of the

---

[5]

 Ms. Miller testified during her deposition that she moved from the residence she rented at the time of the events described above because of the events that form the basis of this lawsuit. (Miller Depo. at 29-30, ECF #24).  She moved in April of 2019, approximately a month before this lawsuit was filed.

date of his deposition he remained employed by the City.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing prior FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence

-6-

presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). Evidence may be presented by citing to particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). In lieu of presenting evidence, Fed. R. Civ. P. 56(c) also allows that a party may show that the opposing party's evidence does "not establish the presence of a genuine dispute" or that the adverse party "cannot produce admissible evidence to support the fact."

According to Fed. R. Civ. P. 56(e),

[i]f a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

## **Analysis**

### A.  City of Shaker Heights

Ms. Miller has sued the City of Shaker Heights for the harm she allegedly suffered as a result of the above encounter. As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999); *see also Graham v. County of Washtenaw*, 358 F.3d 377, 382 (6th Cir. 2004)(to prove

-8-

municipal liability the city must be responsible for a constitutional violation). Moreover, the policy or custom must be the moving force of the constitutional violation in order to establish municipal liability. *Monell*, 436 U.S. at 690.

Liability against a municipality is available under multiple theories. *See id.* at 660-61 (an express municipal policy); *City of St. Louis v. Praprotnick*, 485 U.S. 112, 127 (1988) (a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"); *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) ( a failure to act where the "inadequacy [of the existing practice is] so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]"); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989) (a ratification of a municipal employee's unconstitutional acts by failing to meaningfully investigate and punish allegations of unconstitutional conduct). Here, Ms. Miller claims that the City is liable because it failed to properly train Officer Smith and failed to take appropriate disciplinary action against him in connection with the events described in the Complaint. In order for these charges to rise to the level of a *Monell* violation, the alleged failure to train and failure to take disciplinary action must equate to a widespread practice or custom so common that it has the effect of a written policy. *See, Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994). In other words, the City of Shaker Heights cannot be found liable unless Plaintiff has established the toleration of a custom or practice, that led the deprivation of Ms. Miller's Constitutional rights. *Averyhurst v. City of Shaker Hts.*, N.D. Ohio No. 1:16-C-2071, 2017 WL 3705928, *5.

-9-

1.      Failure to Train

Ms. Miller claims that the City failed to properly train its officers.  The Supreme Court in

*Canton* has explained:

> The issue . . . is whether that training program is adequate; and if it is not, the
> question becomes whether such inadequate training can justifiably be said to
> represent "city policy." It may seem contrary to common sense to assert that a
> municipality will actually have a policy of not taking reasonable steps to train its
> employees. But it may happen that in light of the duties assigned to specific
> officers or employees the need for more or different training is so obvious, and the
> inadequacy so likely to result in the violation of constitutional rights, that the
> policymakers of the city can reasonably be said to have been deliberately
> indifferent to the need. In that event, the failure to provide proper training may
> fairly be said to represent a policy for which the city is responsible, and for which
> the city may be held liable if it actually causes injury.
> *Id.* at 390 (footnotes omitted).

There are "at least two types of situations that would justify a conclusion of deliberate

indifference in the failure to train police officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.

1999).  One situation "is where the city fails to act in response to repeated complaints of

constitutional violations by its officers." *Id.*  Another "is failure to provide adequate training in

light of foreseeable consequences that could result from the lack of instruction." *Id.*  In both

cases, deliberate indifference is established when "the need for more or different training is so

obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

policymakers of the city can reasonably be said to have been deliberately indifferent to the need."

*Canton*, 489 U.S. at 388-89 (1989).  In sum, to succeed on this claim, a plaintiff must prove that

"(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was

the result of municipality's deliberate indifference; and (3) the inadequacy was closely related to

or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.

-10-

2006).

The City has a set of policies, which, if followed, would have prevented the alleged misconduct by Officer Smith.  The Shaker Heights Police Department has published Rules and Regulations, a written Code of Ethics, and a Records and Security and Privacy Policy, all of which address behavior underlying the allegations at issue in this case.  Commander Cole testified that all of these policies are reinforced at each step of the training process, throughout the probationary period, and during each officer's entire tenure with the Department.  Complaints arising from alleged violations of these policies are investigated by the Internal Affairs Office and when warranted, disciplinary measures are taken.  Plaintiff has offered no evidence to the contrary.  Plaintiff has also failed to identify any particular training that she claims should have been offered but wasn't, nor has she identified any specific deficiencies in the actual training provided.

Further the evidence shows that the relevant policies were enforced and that violations were investigated.   There is no evidence that a similar situation would likely reoccur without additional training, and it was not predictable that any officer lacked specific tools to avoid the allegations at issue in this case.  In fact, Officer Smith, himself testified that he understood that the actions alleged in this case would be both inappropriate under the Department policies, and illegal. (Smith Depo. at 161, ECF #25).  Therefore, a lack of training or enforceable City policy cannot be considered to have been the moving force of the violation.  In light of this evidence, a reasonable juror could not infer that the City failed to adequately train its officers or that such failure, if any, amounted to deliberate indifference.  Consequently, the City's motion for summary judgment is granted with respect to this claim.

2.    Ratification

A plaintiff can establish a municipal liability claim by demonstrating that a final municipal policymaker approved of a subordinate's behavior, approved of an investigation that was so inadequate as to constitute a ratification of the alleged behavior, or failed to punish the responsible parties. *Wright v. City of Canton*, 138 F.Supp.2d 955, 966 (N.D. Ohio 2001), citing *Praprotnik*, 485 U.S. at 127; *Johnson v. City of Memphis*, 2008 U.S. Dist. LEXIS 1199, at *11 (W.D. Tenn. Jan. 8, 2008). *See also, Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985); *Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989).

Here, the City did conduct an investigation of the Officer Miller incident. Neither party has submitted evidence of what the results of that investigation are, although it is clear that Officer Miller was placed on paid administrative leave pending the results. Ms. Miller was asked to participate in the investigation by providing a written statement but, according to her deposition testimony, did not agree to make any statements on the record in the investigation. Given the evidence before this Court of the City's investigation and suspension of Officer Miller, and her failure to fully cooperate in the investigation, Ms. Miller has failed to raise a genuine issue of material fact on the issue of ratification, and the claim cannot survive summary judgment. Further, the City investigated the only other complaint raised against Officer Smith during his tenure. The evidence provided shows that the investigation was thorough and the complainants accusations were taken seriously. There is no evidence that support a finding that the City ratified Officer Smith's alleged behavior. Consequently, the City's motion for summary judgment is also granted with respect to this claim.

B.    Officer Tyler Smith

Title 42, section 1983, of the United States Code provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Because the Fourth Amendment has been incorporated by the due process clause of the Fourteenth Amendment, state officials are subject to §1983 lawsuits under these amendments.

To succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that a right secured by the Constitution or laws of the United States was deprived, and (2) that the defendant committed the violation while acting under color of state law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

1.    Color of State Law

Officer Smith claims that, even if the facts alleged by Ms. Miller are taken as true, they do not support a finding that he was acting under color of state law during the encounter at issue. The allegations, if true, do not support this conclusion.  A defendant was acting under color of state law or authority for purposes of section 1983, if he wielded or abused power he held in connection with his state appointed authority.   This does not mean he must be acting within the scope of that authority, or even in connection with his official duties.  "[I]t is well established that an official may act under color of law even when he or she encounters the victim outside the conduct of official business and acts for reasons unconnected to his or her office, so long as he or

-13-

she employs the authority of the state in the commission of the crime.*" U.S. v. Giordano*, 442 F.3d 30, 43 (2nd Cir. 2006).   However, "a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of ostensible state authority, is not conduct occurring under the color of state law." *Burris v. Thorpe*, 166 F.App'x 799, 802 (6th Cir. 2006).

Defendant's argument that he was not acting in an official capacity, not seeking to further any governmental interest, not on duty, and not in uniform misses the point.  The law does not require that the Defendant be acting on behalf of the state under the state's authority.  Indeed most constitutional violations occur when officials abuse, overreach, or act outside their official authority. .  "It is axiomatic that under 'color' of law means 'pretense' of law," and not the authorized exercise of legal authority. *Monsky v. Moraghan*, 127 F.3d 243, 245 (2nd Cir. 1997).  Further,  "[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer acted under color of state law." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975).

If the evidence provided by Ms. Miller is found to be true, a jury could easily find that Officer Smith was acting under color of state law when he propositioned her for sex in exchange for fixing, or getting rid of a ticket issued during a traffic stop he initiated.   She testified that she met Officer Smith only through his exercise of his official duties.  She claims Officer Smith obtained her phone number and home address from the ticket issued when he pulled her vehicle over.  She testified that he used this information, obtained through his official duties, to contact her in order to proposition her.  She also testified that he told her he would fix, pay for, or get rid of the ticket that was issued as part of his official duties if she would have sex with him.  In addition, Ms. Miller claims that when Officer Smith actually propositioned her, he was wearing

-14-

his uniform and tool belt, including his handcuffs, and was carrying a weapon.[6] If these claims, or a significant subset of these claims, are true, a jury could find that Officer Smith's alleged inappropriate behavior was aided by an "indicia of ostensible state authority" because he could not have contacted her, or offered to fix her ticket in exchange for sex without taking advantage of information and power attendant to his official role as a police officer. *See, Burris* at 802.

### 2. Constitutional Violations

Plaintiff has brought claims under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution. The Fourth Amendment protects against unreasonable searches and seizures in the context of official restraint or detention. There is no allegation that Ms. Miller was ever subject to a search or seizure within the meaning of the Fourth Amendment. Further, although she includes a due process claim in her Complaint, she does not actually argue that there was insufficient process, but rather that she was deprived of her own body integrity. Body integrity claims are consistently addressed solely under the Fourteenth Amendment's right to substantive due process. *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716 (6th Cir. 1996). Ms. Miller's claims will therefore be considered only under the Fourteenth Amendment right to substantive due process, and her claims for relief under the Fourth

---

[6]

Although wearing his uniform and carrying a gun is not determinative of whether he was acting under the color of state law, it can certainly be considered when trying to determine whether he was operating under a pretense of authority. Defendant relies heavily on the case of *Harmon v. Grizzel*, S.D. Ohio Case No. 1:03 CV 169, 2005 WL 1106975 (S.D. Ohio 2005), to argue that an officer is not acting under color of law simply because he is wearing a uniform, carrying a gun, or even driving a police car. In that case, however, the officer had a prior relationship with the victim that did not arise from any official or professional encounter. In this case, Ms. Miller claims that her only encounter with Officer Smith had been during a traffic stop he initiated mere hours before the events giving rise to her Complaint.

Amendment and the Fourteenth Amendment's Due Process clause are dismissed.

To recover on a substantive due process claim, a plaintiff must prove that she has a protected liberty interest and that Officer Smith's behavior was so egregious or outrageous that "it may fairly be said to shock the contemporary conscience." *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). The right to body integrity is a recognized right protected by substantive due process. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). This includes the right to be free from "invasion of. . . personal security" including by means of sexual abuse. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3rd Cir. 1989). Therefore, Ms. Miller has identified a protected liberty interest.

Courts have generally found conduct to shocking to the contemporary conscience if it offends a sense of justice, runs afoul of the decencies of civilized conduct, or is intended to injury in a manner unjustified by any government interest. *Lewis*, 523 U.S. at 846-50. If Ms. Miller's account of the events at issue is found to be true, a jury could find that Officer Smith's behavior offends a sense of justice and runs afoul of decency and civilized conduct. Defendant does not attempt to argue that a coerced sexual encounter, precipitated by a police officer's abuse of power would not rise to this standard. Rather he argues that the facts of this case do not paint such a picture. His argument presumes Ms. Miller's unfettered consent and discounts the level of intimidation and coercion she claims he exerted on her. Because Officer Smith's argument for summary judgment on Ms. Miller's Fourteenth Amendment claim is reliant on the acceptance of facts that are in dispute, his motion must fail.

3. Qualified Immunity

Defendant, Officer Smith contends that he is entitled to qualified immunity on Plaintiff's

-16-

claims. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have know." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, at 526 (1985). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, at 231 (2009)(internal citations omitted). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015), *citing Person v. Callahan*, 555 U.S. 223, 242 (2009). The application of qualified immunity is determined as a matter of law, not as a matter of fact. *Garvie v. Jackson*, 845 F.2d 647, 649 (6ᵗʰ Cir. 1988).

Qualified immunity under federal law is applied using a two part test. First, courts must determine whether the alleged acts violate a constitutional right. Second, the court must determine whether at the time of the actions, the constitutional right is "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The determination must be based on what an reasonable officer would believe or understand under the circumstances given what was

-17-

known to the officer at the time. *White v. Pauly*, 137 S.Ct. 548, 550 (2017); *Kinsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015); *Fox v. DiSoto*, 489 F.3d 227 at 236 (6th Cir. 2007). The standard is objective, and must not be applied using hindsight unavailable to the officers at the time the action were taken. *Id.*  Once a defendant has shown that he was acting within his discretionary authority, the plaintiff bears the burden of proving that he is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th cir. 1991).

As set forth above, Ms. Miller has properly alleged a Section 1983 claim for deprivation of her constitutional right to substantive due process in the context of preserving her body integrity.  There can be no question that a Fourteenth Amendment right to body integrity is well established, and this right means that citizens have the right to be free from sexual abuse.  *See, Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3rd Cir. 1989).  Further, a reasonable officer would understand that coercing sexual relations through an implicit threat of force, retaliation, or abuse of official power would violate that right of body integrity.  More specifically as alleged in this case, a reasonable officer should understand that taking personal contact information gathered during a traffic stop, using that information to contact the subject of the traffic stop, and then propositioning her for sex in exchange for fixing or getting rid of the ticket that resulted from that stop would be illegal behavior.  In fact, Officer Smith, himself testified that he understood such actions would be both inappropriate under the Department policies, and illegal.  (Smith Depo. at 161, ECF #25).  For these reasons, Officer Smith is not entitled to qualified immunity for the claims alleged in this case.

-18-

## **Conclusion**

For the reasons set forth above, Defendant City of Shaker Heights' Motion for Summary Judgment is GRANTED.  (ECF #26).    Defendant Tyler Smith's Motion for Summary Judgment is GRANTED in part and DENIED in part.  (ECF #22).    Trial remains set for February 24, 2020 at 8:30 a.m.. IT IS SO ORDERED.

DONALD C. NUGENT
Senior United States District Judge

DATED: February 5, 2020

-19-